```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
Barbara Tafuto,                     :
                                    :     08 Civ. 8433 (LTS)(THK)
              Plaintiff,            :
                                    :     MEMORANDUM OPINION AND
                                    :            ORDER
         -against-                  :
                                    :
NEW YORK STATE OFFICE FOR CHILDREN  :         (Pro Se)
AND FAMILY SERVICES, et al.,        :
                                    :
              Defendants.           :
                                    :
------------------------------------X
```

**THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

This action was referred to this Court for general pretrial supervision, pursuant to 28 U.S.C. § 636(b)(1)(A). Plaintiff Barbara Tafuto moves for leave to file a second amended complaint in order to add two defendants and three additional causes of action. For the reasons stated below, the application is denied.

### BACKGROUND

Plaintiff's claims arise from her operation of a home-based day care center, Group Family Day Care, which she has managed since 1996. In June 2006, a parent complained to the New York State Central Registry ("SCR") that her child had been bitten by another child while both were under Plaintiff's care. Plaintiff was eventually cleared of all charges of child abuse and/or neglect, but she alleges that county and state officials violated her state

1

and federal rights during the investigative processes, resulting in economic, reputational, and emotional harms, as well as the loss of her state-issued license. (See, e.g., Am. Compl. ¶¶ 92, 99.)

On October 2, 2008, Plaintiff filed the Complaint pro se[1] against Commissioner of the New York State Office for Children and Family Services ("OCFS") Gladys Carion, Director of the New York State Register ("SCR") David Peters, Director of the OCFS Yonkers Regional Offices ("YRO") Francis Franco-Montero, OCFS employee Linda Bressler, OCFS employee Melissa Laks (collectively, "State Defendants"), Orange County Executive Edward Diana, Orange County Department of Social Services ("DSS") Commissioner David Jolly, and DSS employees Candy Casaly, Marian Morris, Irene Kurlander (collectively, "County Defendants"), and Does I-V.  The Complaint asserted federal constitutional and state tort claims for coercion, libel, and misuse of office.  Some of the County Defendants moved to dismiss the Complaint on January 13, 2009.  An additional County Defendant, who was served with process after the others, moved to dismiss the Complaint on May 20, 2009.

While the first motion to dismiss was pending, on March 31, 2009, this Court issued a Scheduling Order for the conduct of pretrial activities, and that precluded further amendments of the

---

[1] The Complaint was actually submitted to the Court's Pro Se Office on March 31, 2008.  It was docketed on October 2, 2008.

pleadings or the joinder of additional parties without a showing of good cause. The same Scheduling Order set a discovery deadline of May 27, 2009. On November 6, 2009, the District Court (Hon. Laura T. Swain, U.S.D.J.) granted County Defendants' 12(b)(6) motion to dismiss the Complaint in its entirety. With respect to Plaintiff's federal law claims, the Court determined that the County Defendants were entitled to qualified immunity. Plaintiff's state law claims were dismissed without prejudice because Plaintiff failed to comply with the requirements of New York General Obligations Law § 50-e(1)(c). See Tafuto v. New York State Office for Children and Family Services, No. 08 Civ. 8433 (LTS)(THK), 2009 WL 3754194 (S.D.N.Y. Nov. 9, 2009).

On November 18, 2009, Plaintiff moved for reconsideration of the Court's decision, and the motion was denied. However, Plaintiff was granted leave to file an amended complaint no later than January 22, 2010. The Court's Order stated explicitly that "[p]laintiff must include in any such amended complaint all factual allegations and document attachments that she wishes the Court to consider." (Order, dated Dec. 16, 2009.) On January 21, 2010, however, Plaintiff requested an extension of time to file an amended complaint, and an extension until February 5, 2010 was granted.

Plaintiff filed the Amended Complaint on February 5, 2010,

naming the same Defendants as in the original Complaint, save John Does I-V. In the Amended Complaint, Plaintiff alleged that Defendants committed federal due process violations and violations of New York State Social Services Law. On May 5, 2010, two of the State defendants moved to dismiss the Amended Complaint on grounds of Eleventh Amendment immunity and lack of personal involvement, and, on June 1, 2010, Plaintiff responded to the motion.

On February 17, 2010, this Court issued an amended Scheduling Order that set the discovery deadline at July 30, 2010. As in the first Scheduling Order, the Amended Scheduling Order stated that there could be no further amendments to the pleadings or joinder of additional parties without a showing of good cause. The discovery deadlines in the Scheduling Order were amended three additional times, and each amendment stated that there could be no further amendments to the pleadings or joinder of additional parties without a showing of good cause. The last Revised Scheduling Order was entered on January 5, 2011, and the final discovery deadline was set at January 7, 2011. (See Revised Scheduling Order, dated Jan. 5, 2011, ¶ 3.)

By motion dated February 4, 2011, Plaintiff filed the instant Motion to File a Second Amended Complaint. By this motion, filed four weeks after the deadline for completing pretrial discovery, and approximately two-and-one-half years after Plaintiff initiated

this action, Plaintiff seeks to add as additional defendants David Molik, Director of the OCFS Bureau of Special Hearings, and Tara Flynn, an OCFS employee based in the Yonkers office. Without further comment, Plaintiff omits County Defendant, Edward Diana. Plaintiff also seeks to add three claims to her Complaint, stating that (I) State and County Defendants misused the CONNECTIONS database, (ii) State Defendants violated the confidentiality requirements of the Child Abuse Prevention and Treatment Act ("CAPTA"), and (iii) State and County Defendants failed to adhere to statutory time requirements in their administrative reviews of Plaintiff's case. Plaintiff further seeks to "clarify" many of the factual allegations in the Amended Complaint. None of these amendments are proposed in order to address deficiencies in the Amended Complaint that were identified in the State Defendants' Motion to Dismiss the Amended Complaint.

## DISCUSSION

Motions to amend are generally governed by Federal Rule of Civil Procedure 15(a) ("Rule 15(a)"), which states that "[t]he court should freely give leave when justice so requires." See Fed. R. Civ. P. 15(a)(2).[2] Because a scheduling order has been entered,

---

[2] Rule 21 is also applicable to the extent that new parties are added, see Fed. R. Civ. P. 21; Duling v. Gristede's Operating Corp., 265 F.R.D. 91, 96-97 (S.D.N.Y. 2010), but because Rule 21 is analyzed under "same standard of liberality" as Rule 15, see

however, the moving party must first satisfy the requirements of Rule 16(b), see Parker v. Columbia Pictures Indus., 204 F.3d 326, 339-40 (2d Cir. 2000); In re Wireless Tel. Servs. Antitrust Litig., No 02 Civ. 2637 (DLC), 2004 WL 2244502, at *4 (S.D.N.Y. Oct. 6, 2004), which states that a scheduling order "may be modified only for good cause." See Fed. R. Civ. P. 16(b)(4); see also Parker, 204 F.3d at 339; In re Wireless, 2004 WL 2244502, at *5.

I. Rule 16

The Rule 16(b) "good cause" standard was created to ensure that "at some point both the parties and the pleadings will be fixed." See Parker, 204 F.3d at 339-40.

In this case, several scheduling orders have been entered, each of which states that "[t]here shall be no further amendments to the pleadings or joinder of additional parties without good cause shown." (See, e.g., Revised Scheduling Order, dated Jan. 5, 2011, ¶ 1.) Therefore, before proceeding to the application of Rule 15(a), Plaintiff must show good cause for her failure to comply with the Court's Scheduling Orders.

---

Garcia v. Pancho Villa's of Huntington Village, Inc., 268 F.R.D. 160, 165 (E.D.N.Y. 2010) (quoting Duling, 265 F.R.D. at 96-97); JPMorgan Chase Bank, N.A. v. IDW Group, LLC, No. 08 Civ. 9116 (PGG), 2009 WL 1357946, at *2 (S.D.N.Y. May 12, 2009), the motion to add additional parties and claims will both be analyzed under the Rule 15 standard.

The determination of "good cause" depends on the diligence of the moving party. See Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009); Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003); Parker, 204 F.3d at 340 (citing In re Milk Prods. Antitrust Litig., 195 F.3d 430, 437 (8th Cir. 1999)). Although "the primary consideration is whether the moving party can demonstrate diligence," the Court may consider other factors as well, including "whether allowing amendment of the pleading at this stage of the litigation will prejudice defendants." Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 244 (2d Cir. 2007).

The Court finds that Plaintiff has not shown good cause for failing to seek to amend the Complaint, yet again, within the deadline set in the Scheduling Orders. In her Memorandum of Law in support of her motion, Plaintiff concedes that she "was made aware of David Molik's personal role in policy making when Plaintiff reviewed the initial disclosures submitted . . . in 2009." (Pl.'s Mem. at 20.)[3]  She also concedes that she learned that Tara Flynn

---

[3] Although Plaintiff contends that it was not until October of 2010 that she realized Mr. Molik and the Bureau of Special Hearings are separate from the BECS Licensing Agency, the New York State Central Registry, and the OCDSS (see Pl.'s Reply Mem. at 8), that awareness was not necessary in order to identify Mr. Molik as a defendant.  In any event, Plaintiff fails to provide a reasonable explanation for why she delayed four or five months, after learning that the Bureau of Special Hearings was a separate division, in seeking to amend the Complaint.

was involved in providing confidential information to Melissa Laks in or about May or June of 2010. (See Pl.'s Reply Mem. at 7; see also Declaration of Asst. Attorney General Jennifer L. Johnson, dated Mar. 11, 2011, Ex. F.) Yet, Plaintiff waited no less that eight months, and after the discovery deadline had passed, to seek the addition of the new defendants to the Amended Complaint. In fact, there is evidence indicating that Plaintiff was aware of Mr. Molik even before the original Complaint was filed. She concedes in the Second Amended Complaint that he sent her a letter indicating that the allegations against her would not be disclosed, yet they were, and she seeks to hold him responsible in his supervisory capacity. (See Proposed Second Am. Compl. ("Second Am. Compl.") ¶ 49.) Plaintiff received the letter from Mr. Molik in 2007, and it was attached to the initial Amended Complaint. (See Declaration of Laura Wong-Pan in Opposition to Motion for Leave to File a Second Amended Complaint, dated Mar. 9, 2011, Ex. F.)

Plaintiff further argues that she did not begin to understand the role of the CONNECTIONS database and the SCR until September 2010 and October 2010, respectively.[4] (See Reply to Opposition to Second Amended Complaint, at 5.) An understanding of state databases, however, is unnecessary to formulate a constitutional

---

[4] Plaintiff does not attempt to explain why the CAPTA claim was raised so belatedly.

8

claim. In any event, the delay between Plaintiff's understanding, in September and October 2010, and her motion to amend, in February 2011, demonstrates a lack of diligence that cannot be excused by her pro se status. Cf. McNeil v. United States, 508 U.S. 106, 113, 113 S. Ct. 1980, 1983 (1993) ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); LoSacco v. City of Middletown, 71 F.3d 88, 92 (2d Cir. 1995) (citing McNeil and further stating that pro se litigants are required to inform themselves of, and to follow, procedural rules).

In addition, Defendants would be prejudiced if the Court were to now allow the amendments of the Complaint that Plaintiff proposes. Pretrial discovery has been completed and Defendants were in the process of preparing motions for summary judgment. Although Plaintiff contends that she will not require any further discovery as a result of the proposed amendments, Defendants argue that they will. They correctly contend that Plaintiff has substantially changed and enhanced her Complaint, adding new facts and legal theories, and embellishing each paragraph with additional details. The Second Amended Complaint is seventy-one pages in length, as compared to the forty-five pages of the Amended Complaint. Defendants contend that they would have to reopen discovery in order to determine the bases for Plaintiff's new

9

claims and allegations, and would need to identify new witnesses to address some of the allegations.

Accordingly, because Plaintiff has not shown good cause for her untimely amendment of the Complaint and such an amendment would be prejudicial to Defendants, Plaintiff has not satisfied the requirements of Rule 16(b), and her motion to amend is denied.

II. Rule 15

Even if Plaintiff could satisfy the good cause requirement of Rule 16(b), she would still have to satisfy Rule 15. See De Malmanche v. Glenrock Asset Management Associates, No. 07 Civ. 10940(KNF), 2011 WL 990165, at *5 (S.D.N.Y. Mar. 16, 2011). In considering amendments of the pleadings under Rule 15, courts look to whether there has been undue delay, whether the non-moving party would suffer undue prejudice, and whether the pleading would be futile. See Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962); Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008). "Generally, a district court has discretion to deny leave [to amend] for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." Holmes, 568 F.3d at 334 (internal quotation marks and alterations omitted). The futility analysis applies the standard for 12(b)(6) motions to dismiss, see Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002), meaning that

10

Plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

As discussed, Plaintiff has unduly delayed in seeking to amend the Complaint. Moreover, allowing the proposed amendments at this time would result in prejudice to Defendants. "Amendment may be prejudicial when, among other things, it would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." AEP Energy Servs. Gas Holding Co. v. Bank of Am., 626 F.3d 699, 725-26 (2d Cir. 2010) (quoting State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981) (internal quotation marks omitted)); accord Platt v. Inc. Vill. of Southampton, 391 Fed. App'x 62, 66 (2d Cir. 2010).

Most of the events in issue in this action occurred in 2006 and 2007, more than four years ago. In addition to requiring additional discovery, the amendment would substantially delay the resolution of this action and require Defendants to expend substantial additional resources on the litigation. The new Defendants would have to be served with process, and they, along with the existing Defendants, would, no doubt, move to dismiss the Second Amended Complaint. The filing of summary judgment motions (the preparation of which were underway), while the motion to

11

dismiss is pending, would not be efficient, as it would be unclear what claims and parties would remain in the action and whether discovery relating to the new claims would be necessary.

In the end, the delay would serve neither Defendants' nor Plaintiff's interests because the addition of detailed factual allegations to an already detailed Complaint is unnecessary and serves to muddy Plaintiff's claims rather than clarify them. Plaintiff asserts that "the information in the Second Amended Complaint is comprised of the same set of facts which offended the Plaintiff in the existing litigation." (Pl.'s Mem. at 9.) Yet, fearing that the existing Complaint is confusing, Plaintiff seeks to add a plethora of new factual detail to the Complaint "to remedy th[at] confusion." (Id. at 10.) The addition to the Complaint of pages of new facts serves no useful purpose, merely adds to the confusion, and would justify the reopening of discovery. With discovery completed, Plaintiff's claims will stand or fall based on the evidence adduced in discovery, not on the clarity of her pleading.

It would also be futile for Plaintiff to add the new Defendants, as any claims against them would be time-barred. There is no federal statute of limitations period for claims under section 1983; therefore, federal courts look to the applicable state-law statute of limitations period for personal injury torts,

12

see Wallace v. Kato, 549 U.S. 384, 387, 127 S. Ct. 1091, 1094 (2007), which, in New York, is three years. See Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009). Section 1983 claims generally begin to accrue when the plaintiff "knows or has reason to know of the injury" that is the basis for his or her claim. Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002).

Here, at the very latest, Plaintiff knew of Mr. Molik's and Ms. Flynn's alleged violation of her rights by no later than early in 2007. As the basis of her claims against Mr. Molik, she claims that he informed her in a June 20, 2006 letter that the preliminary finding of abuse would be kept confidential. Yet, between September and December 2006, various state employees improperly communicated about the finding of abuse. (See Proposed Second Am. Compl. ¶¶ 179-84.) By January 23, 2007, Plaintiff was aware of these matters, because she sent a letter of complaint on that date. (See id. ¶ 188.) Moreover, on the basis of the alleged confidential information, charges were lodged against Plaintiff in March 2007. (See id. ¶ 200.) Finally, in July 2007, the "confidential" information was entered into evidence by the licensing agency which had authority over Plaintiff's license. (See id. ¶ 215.)

With respect to Ms. Flynn, Plaintiff contends that she improperly communicated with various state employees and sent them

13

the preliminary determination of child abuse between October and December of 2006. Plaintiff began complaining about the disclosures in January 2007. (See id. ¶¶ 180-83, 188, 252.)

At the latest, the statute of limitations began to run on January 23, 2007 — the date of Plaintiff's letter-complaint. All of these events occurred at least four years before Plaintiff filed her February 4, 2011 motion for leave to add Ms. Flynn and Mr. Molik as defendants. Thus, the claims against Ms. Flynn and Mr. Molik are barred by the three-year statute of limitations.

Nor can Plaintiff's claims be said to relate back to the date of the original filing under Rule 15(c). See Fed. R. Civ. P. 15(c). For the purpose of adding parties, amendments relate back to the original pleading if (1) the alleged acts "arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading," and (2) within the period for serving the summons and complaint under Rule 4(m), the added party "received such notice of the action that it will not be prejudiced in defending on the merits," and s/he "knew or should have known" that s/he would have been included but for a mistake in the proper party's identity. Id.

There is no substantial dispute that the conduct alleged against Mr. Molik and Ms. Flynn arose out of the same "conduct, transaction, or occurrence" that Plaintiff set out in the original

14

pleading. Plaintiff, however, did not put either Ms. Flynn or Mr. Molik on notice of her claims against them within 120 days of the filing of the initial Complaint, on October 2, 2008, or of the Amended Complaint, on February 5, 2010. The Proposed Second Amended Complaint, containing the claims against Mr. Flynn and Ms. Molik, was not filed until one year after the filing of the Amended Complaint, and more than a year after the three-year limitations period expired.

Plaintiff may not argue that Defendants should have known about the suit under the constructive notice doctrine, which imputes knowledge of a suit to a defendant government official when his or her attorney knew that the additional defendant would be added to the suit. See Abdell v. City of New York, No. 05 Civ. 8453 (RJS)(JCF), 2010 WL 5422375, at *3 (S.D.N.Y. Dec. 22, 2010); Berry v. Village of Millbrook, No. 09 Civ. 4234 (KMK), 2010 WL 3932289 at *5 (S.D.N.Y. Sept. 29, 2010); Velez v. Koehler, No. 87 Civ. 2019 (KMW), 1991 WL 130913, at *2 (S.D.N.Y. July 18, 1991).

> The constructive notice doctrine is based on the theory that the newly added defendant is not prejudiced by the lack of notice if his attorney has already begun preparing a defense for the named defendant during the limitations period. . . . Therefore, in the majority of cases in this Circuit applying the constructive notice doctrine, the attorneys have clear knowledge of the identity of the unidentified defendant, within the limitations period, such that it would be logical to assume that a reasonable attorney would either (1) inform his client of the prospective lawsuit or (2) takes steps

15

to begin preparing a defense. <u>Abdell v. City of New York</u>, 05 Civ. 8453 (KMK)(MJCF), 2006 WL 2620927 at *4 (S.D.N.Y. Sept. 12, 2006) (Corporation counsel had notice of the unnamed defendant's identity because it was representing the unnamed defendant on related state claims of false imprisonment stemming from the same incident); <u>Mosley v. Jablonsky</u>, 209 F.R.D. 48, 53 (E.D.N.Y. 2002) (complaint technically only named the city and the supervising officer as defendants but the body of the complaint identified the un-named officers accused of mistreating plaintiff and, therefore, corporation counsel knew or should have known that these officers would be added as defendants); <u>Almeda v. City of New York</u>, No. 00 Civ. 1407, 2001 WL 868286, at *3 (E.D.N.Y. July 26, 2001) (despite naming only the City, along with "John Doe" and "Ronald Roe" as defendants, the complaint emphasized the role of Sergeant Robert Barnes as plaintiff's "chief assailant" and therefore counsel had notice) . . . .

<u>Velez v. Fogarty</u>, No. 06 Civ. 13186 (LAK)(HBP), 2008 WL 5062601, at *5-6 (S.D.N.Y. Nov. 20, 2008) (internal citations omitted).

There was nothing in the original or Amended Complaint that would have put Defendants' counsel on notice that Plaintiff intended to sue Mr. Molik or Ms. Flynn. Indeed, even the Second Amended Complaint does not allege Mr. Molik's direct involvement in any alleged violation of Plaintiff's rights; instead, it only alleges that he sent her a letter stating that certain material would not be disclosed, not that he breached her confidentiality. On that basis, she seeks to hold Mr. Molik responsible in his supervisory capacity. Ms. Flynn was not mentioned or identified in

either the original or amended Complaints.[5]

Plaintiff contends that she notified opposing counsel that two additional parties were involved in violating her rights on August 27, 2010. (See Pl.'s Reply, at 4.) In fact, Plaintiff's August 27, 2010 letter merely stated that she was planning to disclose to county and state authorities a letter from Mr. Molik and an email from Ms. Flynn. (See Letter from Barbara Tafuto to Jennifer Johnson and Laura Wong-Pan, dated Aug. 27, 2010 (attached as Exhibit A to Pl.'s Reply).) However, even if the August 27, 2010 correspondence could be taken as evidence that the State Defendants' counsel was on notice that Mr. Molik and Ms. Flynn would be added as defendants to this action, that notice would still fall outside the three-year statute of limitations; moreover, notice was received after June 7, 2010, the date under Rule 4(m) by which Plaintiff was obligated to effect service of the Amended Complaint. See Fed. R. Civ. P. 15(c)(1)(c). Therefore, the Second Amended Complaint cannot relate back to the Amended Complaint, and Plaintiff's claims against Mr. Molik and Ms. Flynn are barred by the statute of limitations.[6]

---

[5] The single document that shows any relation (albeit a tenuous one) between Ms. Flynn and Plaintiff's claims was not even located in discovery until May 2010, after the statute of limitations had run. (See State Defendants' Mem. at 18.)

[6] Plaintiff's claims against Mr. Molik and Ms. Flynn in their official capacites are also barred by the Eleventh Amendment. See Kentucky v. Graham, 473 U.S. 159, 169, 105 S. Ct. 3099, 3107 (1985); Will v. Michigan Dep't of State Police, 491

17

For the reasons set forth above, Plaintiff's motion to file a Second Amended Complaint is denied.

By no later than June 3, 2011, Plaintiff shall advise Defendants' counsel of whether it is her intent to dismiss her claims against Defendant Edward Diana. By the same date, Defendants shall propose an amended schedule for the filing of dispositive motions.

SO ORDERED.

_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated:   May 25, 2011
         New York, New York

**This Opinion resolves the motion entered as Docket Entry # 75.**

---

U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989); Huminski v. Corsones, 396 F.3d 53, 70 (2d Cir. 2005).